720 So.2d 540 (1998)
In re ESTATE OF Marvin ROBINSON, Deceased.
Shirley ROBINSON, Appellant,
v.
Marilyn Z. ROBINSON, etc., et al., Appellees.
No. 97-1243.
District Court of Appeal of Florida, Fourth District.
August 5, 1998.
Rehearing, Certification and Clarification Denied October 6, 1998.
Michael L. Trop of Atlas, Pearlman, Trop & Borkson, P.A., Fort Lauderdale, for appellant.
William Jay Palmer and David Lawrence, III of Adorno & Zeder, P.A., Miami, for Appellees-Marilyn Z. Robinson and Nationsbank.
Rehearing En Banc, Certification and Clarification Denied October 6, 1998.
BROWNELL, SCOTT M., Associate Judge.
This case presents an issue of first impression in Florida, namely, whether the testamentary aspects of an inter vivos trust are subject to reformation after the death of the settlor.
In 1987, Marvin Robinson ("Marvin") executed a will with a pour over provision. A trust instrument, executed the same day, created a subtrust for his wife, Marilyn ("marital trust"), and a subtrust for each of his two daughters. According to the will, estate taxes were to be paid from the residuary estate without apportionment. The trust instrument, on the other hand, directed that taxes be paid out of the trust principal prior to the principal's division into the three subtrusts.
After Marvin's death in 1992, Marilyn filed suit to reform the will and trust. She contended that Marvin's intent was to fund the *541 marital trust with one-third of the residuary estate calculated before payment of taxes and that the taxes and expenses were to be paid from Shirley's subtrust ("Shirley's trust"). In January 1994, the trial court granted summary judgment against Marilyn on the will reformation count. The court's finding, that wills cannot be reformed, is not in dispute. See In re Estate of Reese, 622 So.2d 157 (Fla. 4th DCA 1993). Thereafter, Marilyn added a count to her complaint alleging that the will and the trust contained numerous ambiguities which would allow the court to admit extrinsic evidence as proof of Marvin's intent.
After an evidentiary hearing, the trial court concluded that the provisions of the will and the trust conflicted with each other and that clear and convincing evidence established Marvin's intention to have Shirley's trust bear the impact of all estate taxes. The court did not rule on Marilyn's claim for reformation of the trust.
On appeal, this court found that even though the provisions of the will and the trust instrument conflicted, the provisions of the trust instrument controlled and were not internally ambiguous. Robinson v. Robinson, 676 So.2d 511, 513 (Fla. 4th DCA 1996). We reversed the judgment, finding that absent an internal ambiguity in the trust instrument itself, the evidence supporting the court's finding of intent was inadmissible.
Marilyn then petitioned the trial court for a ruling on the trust reformation count, which had not been decided by the court's earlier order. In March 1997, the trial court granted her petition for reformation, finding that the trust instrument itself, while part of a testamentary scheme, was not a testamentary device and could be reformed after the death of the settlor where evidence of a unilateral mistake existed. The court ordered the trust instrument reformed to conform to Marvin's previously established intent. Shirley now appeals.
No Florida case has addressed whether an inter vivos trust may be reformed after the death of the settlor where evidence of a unilateral mistake exists. Shirley argues that case law as it applies to either invalidation of trusts based on mistake in the inducement, reformation of wills, or reformation of deeds, should control. We disagree.
Shirley first cites Forsythe v. Spielberger, 86 So.2d 427 (Fla.1956), in which the court refused to invalidate a trust based on mistake in the inducement. We find Forsythe distinguishable for two reasons. First, Marilyn seeks to reform the trust based on a unilateral mistake in contents, not in the inducement.[1] Second, Marilyn seeks to reform the trust instrument, not invalidate it. Forsythe, 86 So.2d at 430 ("We have examined the authorities relied on by petitioners and they appear to deal with the question of reformation of an instrument for mistake in contents. We are concerned here with the right to strike down an instrument for error in the reasons for executing it.") (emphasis added)
Shirley next argues that a trust with testamentary aspects is a valid will substitutea testamentary device so similar to a will as to be governed by the prohibition against reformation of wills. The trial court held that while the inter vivos trust was part of Marvin's testamentary scheme, the trust itself was not a testamentary device. See generally Robinson, 676 So.2d at 513 n. 1. The trial court relied on Zuckerman v. Alter, 615 So.2d 661 (Fla.1993), which stated that an inter vivos trust is not "a testamentary `will substitute.'" In so stating, Zuckerman relied in part on the fact that an inter vivos trust does not require compliance with the same formalities required for the execution of wills.
The Florida Legislature expressly recognized the testamentary character of inter vivos trusts in 1995 with the passage of section 737.111, Florida Statutes. That section requires the testamentary aspects of a trust to be executed with the same formalities required for a will. § 737.111(1), Fla. Stat. (1997). "Testamentary aspects" are defined as "those provisions of the trust that dispose *542 of the trust property on or after the death of the settlor other than to the settlor's estate." § 737.111(4), Fla. Stat. (1997). As such, this section arguably undermines Zuckerman`s assertion that an inter vivos trust is not a testamentary will substitute. Nevertheless, we agree with the trial court. Section 689.075(1) indicates that an inter vivos trust should not be deemed the functional equivalent of a will, even though its testamentary aspects must be executed like one. See § 689.075(1), Fla. Stat. (1997); see also Zuckerman, 615 So.2d at 663 ("If by the terms of the trust an interest passes to the beneficiary during the life of the settlor, although that interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not testamentary.")
Finally, Shirley makes an analogy to cases which hold that a court may not reform transfers by deed after the death of the grantor based on a unilateral mistake. She cites Harrod v. Simmons, 143 So.2d 717 (Fla. 2d DCA 1962), and Triesback v. Tyler, 62 Fla. 580, 56 So. 947 (Fla.1911). In Harrod, the court refused to reform a deed after the death of the grantor where the deed omitted a piece of property that the grantor allegedly intended to convey. 143 So.2d at 718. The Harrod court relied on Triesback, which did not allow reformation after the death of the grantor where the deed incorrectly described a parcel of land. 62 Fla. at 581, 56 So. at 948.
A closer examination reveals that the courts in Harrod and Triesback refused to reform the deeds due to a lack of consideration. They found that love and affection amounted to inadequate consideration to support a grantee's acquisition, by way of reformation, of property which would otherwise belong to the estate and pass to other heirs through inheritance. Harrod, 143 So.2d at 719; Triesback, 62 Fla. at 581, 56 So. at 948. Triesback stated that, in the absence of valuable consideration, "the grantee has no equity to reform the deed to the disinherison of the other heirs of the grantor equally entitled to her bounty." 62 Fla. at 581-82, 56 So. at 948. These cases stand for the proposition that reformation of a deed is not available, even for a mistake, where the grantee seeks to increase the size of the grant against the interests of the grantor-donor or its estate.
Unlike those cases, the parties here are not proceeding against the grantor or his estate, but instead, against each other. Cases from other jurisdictions indicate that reformation of a trust based on mistake is permissible where the action is between competing beneficiaries. See Reinberg v. Heiby, 404 Ill. 247, 88 N.E.2d 848 (1949); Berman v. Sandler, 379 Mass. 506, 399 N.E.2d 17 (1980); Roos v. Roos, 42 Del.Ch. 40, 203 A.2d 140 (1964). The court in Reinberg wrote:
The facts and circumstances recounted impel the conclusion that it is not merely the right but the undoubted duty of the court of equity to reform the instrument to conform with the intention of the grantor. The power and authority of a court of equity to correct the mistakes of a scrivener incorporated into a contract, deed, or other instrument is so well known as to require no citation of authorities. While it is equally true that equity will not interfere in favor of a volunteer against his grantor and those claiming under him because to do so would enlarge the bounty of a recipient at the expense of and against the interest of the donor grantor, this exception can have no application to the present factual situation. Here, the grantor's interest in the property itself is not involved. The contest is not one between a volunteer and a grantor or the grantor's successors in interests. The present litigants are co-beneficiaries of a voluntary trust agreement. Their claims arise out of the same instrument and are not founded in any way on their additional status as heirs of the grantor.

88 N.E.2d at 852 (emphasis added); see also, 66 Am.Jur.2d Reformation of Instruments § 43 (2d ed. 1973) ("The rule against reformation of voluntary conveyances has its own limitation and exceptions. In a proper case, relief may be had as between parties claiming under the same instrument, the interests of the grantor not being at stake."). Reinberg, Berman, and Roos all reformed trusts after the death of the settlor where clear and convincing proof of a drafting error existed. The court in Reinberg described the policy behind allowing a trust reformation as follows:
The decretal order of the circuit court reforming the trust agreement to correct *543 the admitted error of the scrivener is not adverse to the interest of the grantor. On the contrary, the decree is in harmony with his interest, since it effectuates his manifest intention to divide the property in question equally between his two daughters. Indeed, this is a compelling reason for holding that a plaintiff beneficiary in a voluntary trust agreement has the right to have the agreement reformed as against the defendant, the other beneficiary, claiming under the same instrument. Although defendant specifically admits that the trust indenture, as uncorrected, fails to carry out the actual intention of the grantor, she suggests, nevertheless, that a court of equity would not reform the agreement, thereby permitting the manifest error of the scrivener to be perpetuated, upon the ground that plaintiff, having paid nothing has lost nothing. By the same token, defendant has paid nothing and seeks to become greatly enriched at the plaintiff's expense and contrary to the intention of the grantor.
88 N.E.2d at 852; see also 89 C.J.S. Trusts § 86 (1955) ("A voluntary deed of trust which, through mistake, failed to express the intention of the settlor, may be reformed even after the settlor's death, even though reformation benefits one beneficiary and harms another.... [I]n an action by one or more beneficiaries under a trust agreement against the others, the agreement may be reformed in equity after the death of the donor, where the mistake in the agreement is conclusively established."); Restatement (Second) of Trusts § 333 (1959) Scott, Trusts § 333.4 (4th ed.1989).
Like Reinberg, Berman, and Roos, we hold that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as the reformation is not contrary to the interest of the settlor. We affirm as to all other issues raised based on law of the case or as being without merit.
KLEIN and GROSS, JJ., concur.
NOTES
[1] We recognize that since Forsythe, Florida courts have held that neither a mistake in the inducement nor a mistake in the contents is sufficient to invalidate a will. See Azcunce v. Estate of Azcunce, 586 So.2d 1216 (Fla. 3d DCA 1991); In re Mullin's Estate, 128 So.2d 617 (Fla. 2d DCA 1961).